

| | United States District Court, Northern District of Illinois | | |
|---|---|---|---|
| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
| CASE NUMBER | 01 C 7350 | DATE | August 27, 2003 |
| CASE TITLE | Peaceable Planet v. Ty Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' Motion for Summary Judgment on the Issue of Whether the Mark "Niles" is a Protectible Trademark [66-1] is granted; and Peaceable Planet's Motion for Partial Summary Judgment on Defendants' Sixth Affirmative Defense is denied. Defendants are granted summary judgment on Counts I through VI. Because the Court finds that Peaceable Planet's "Niles" mark is not protectible under the Lanham Act, Defendants' Motions for Partial Summary Judgment on the Issues of No Likelihood of Confusion [65-1] and Monetary Relief [67-1] and Warner's Motion for Summary Judgment [68-1] are denied as moot. All remaining motions [48-1], [58-1], [113-1], [117-1], [118-1], [133-1 through 151-1], [154-1 through 157-1], and [161-1 through 166-1] are denied as moot.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | _ - number of notices | Document Number |
| | Notices mailed by judge's staff. | | AUG 28 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 180 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PEACEABLE PLANET, INC.,  )
a Georgia Corporation,   )
                         )  Case No. 01 C 7350
    Plaintiff,           )
                         )  Hon. John W. Darrah
    v.                   )
                         )
TY, INC., a Delaware Corporation and  )
H. TY WARNER, an Individual Illinois  )
Resident,                )
                         )
    Defendants.          )

DOCKETED
AUG 28 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Peaceable Planet, Inc. ("Peaceable Planet"), filed a six-count complaint against Defendants, Ty, Inc. ("Ty") and H. Ty Warner ("Warner"), alleging trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); false advertising in violation of § 43(a) of the Lanham Act (Count II); violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2 (Count III); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 (Count IV); common law trademark infringement (Count V); and common law trade disparagement (Count VI). Defendants, pursuant to Federal Rules of Civil Procedure 56, move for summary judgment on the issues of whether "Niles" is a protectible trademark, likelihood of confusion, and monetary relief. Warner also moves for summary judgment. Peaceable Planet moves for summary judgment on Defendants' Sixth Affirmative Defense.

For the reasons that follow, Defendants' Motion for Summary Judgment on the Issue of Whether the Mark "Niles" is a Protectible Trademark is granted; and Peaceable Planet's Motion for Partial Summary Judgment on Defendants' Sixth Affirmative Defense is denied. Because the Court

finds that Peaceable Planet's "Niles" mark is not protectible under the Lanham Act, Defendants' Motions for Partial Summary Judgment on the Issues of No Likelihood of Confusion and Monetary Relief and Warner's Motion for Summary Judgment are denied as moot.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla,

summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Peaceable Planet is a Georgia corporation with its principal place of business in Savannah, Georgia. (Def.'s 56.1 ¶ 1.) Peaceable Planet makes plush toy educational products that are targeted at adults and children. (Pl.'s 56.1 ¶¶ 2, 6.) Ty is a Delaware corporation with its principal place of business in Westmont, Illinois. (Def.'s 56.1 ¶ 2.) H. Ty Warner ("Warner"), an Illinois resident, is the founder, president, and chief executive officer ("CEO") of Ty. (Def.'s 56.1 ¶ 3.)

Warner designed "Beanie Babies", Ty's plush toys, specifically for children. (Pl.'s 56.1 ¶ 32.) One of Ty's philosophies in selling and marketing "Beanie Babies" is to focus on children. (Pl.'s 56.1 ¶¶ 38, 39.)

Peaceable Planet introduced Series I of its plush toys in November 1998. (Def.'s 56.1 ¶ 6.) Peaceable Planet later introduced a plush toy camel named "Niles" ("Peaceable Planet's Niles the Camel") in 1999 and began shipping the plush toy camel in the first half of 1999. (Def.'s 56.1 ¶ 7; Pl.'s 56.1 ¶ 7.) Peaceable Planet did not seek legal advice relating to its use of the "Niles" name in conjunction with a plush toy camel before it first used "Niles" in commerce nor did it obtain an opinion of counsel before using the names of its plush toy products. (Def.'s 56.1 ¶¶ 14, 15.)

From May 1999 through the end of February 2000, Peaceable Planet shipped approximately 3,217 of its "Niles" plush toy camel. (Def.'s 56.1 ¶ 7.) In 1999, Peaceable Planet's advertising and promotion expenses for its products was $112,711.59. (Pl.'s 56.1 ¶ 73.) In 2000, Peaceable Planet's advertising and promotion for its products was $78,708.07. (Pl.'s 56.1 ¶ 73.)

On February 13, 2000, at the New York Toy Fair, Ty introduced a plush camel as part of its "Beanie Babies" collection. (Def.'s 56.1 ¶ 8.) The "Beanie Babies" plush toys introduced by Ty at the New York Toy Fair were prototypes that had no hang tags or names associated with them. (Pl.'s 56.1 ¶ 4.) The name "Niles" first appeared on Ty's website introducing its plush camel to the public on March 1, 2000. (Def.'s 56.1 ¶ 8.)

Ty uses the symbol "TM" following the name "Niles" on its plush toy camel on the hang tag and on the cloth tag on the rear of the toy. (Pl.'s 56.1 ¶ 8.) Ty's use of the "TM" symbol means that Ty is claiming that the word "Niles" as a trademark. (Pl.'s 56.1 ¶ 9.) Ty's website informs consumers that it owns the "Niles" "trademark". (Pl.'s 56.1 ¶ 10.) Ty shipped approximately 1.8 million plush camel toys bearing the word "Niles" accompanied by the "TM" symbol. (Pl.'s 56.1 ¶ 11.) Ty states that "Niles" is a trademark in its catalog by using the "TM" symbol next to "Niles" and through legal notice at the front and back of the catalog. (Pl.'s 56.1 ¶ 12.) On or after March 21, 2000, Ty began shipping its plush toy camel. (Pl.'s 56.1 ¶ 16.) Ty has sold approximately 1,800,000 plush toy camels named "Niles". (Pl.'s 56.1 ¶ 17.)

On March 22, 2000, Peaceable Planet filed an application to register "Niles" with the United States Patent and Trademark Office ("PTO"). (Compl. ¶ 41; Def.'s 56.1 ¶ 9.) On January 23, 2001, the PTO published "Niles" for opposition. (Compl. ¶ 42.) On May 23, 2001, Ty filed a Notice of Opposition to Peaceable Planet's registration of "Niles" with the PTO. (Compl. ¶ 43.) Peaceable Planet has never tried to obtain any type of trademark registration for any plush toy name other than "Niles". (Def.'s 56.1 ¶ 13.)

On March 24, 2000, Peaceable Planet sent Ty a cease and desist letter, demanding that Ty not use the "Niles" mark on Ty's Niles the Camel. (Pl.'s 56.1 ¶ 12.)

-4-

On September 21, 2001, Peaceable Planet filed the instant action. (Def.'s 56.1 ¶ 11.) Defendants answered the complaint, alleging as an affirmative defense that Peaceable Planet's "alleged trademark is not inherently distinctive." (Ty's Answer at 22; Warner's Answer at 23.) Peaceable Planet's trademark application is currently suspended pending this lawsuit. (Def.'s 56.1 ¶ 12.)

In September 2002, Defendants commissioned Monroe Mendelsohn Research, Inc. ("MMR") to conduct a consumer survey to measure how consumers perceive the word "Niles". (Def.'s 56.1 ¶ 10.) MMR surveyed 319 recent and prospective purchasers of plush toys nationwide who were asked about the primary meaning of the word "Niles". (Def.'s 56.1 ¶ 11.) The survey was modeled after a survey known as a "Teflon" survey, which typically tests for genericness not descriptiveness. (Pl.'s 56.1 ¶ 29.) The respondents were told that some words are mainly used as a personal name, some words are mainly used to mean something other than a person's name, and some words are used as both a person's name and to mean something else, as well. (Def.'s 56.1 ¶ 12.) They were then given an example, using "George" as mainly a person's name, "Rose" as meaning both a person's name and something else, and "Ocean" as mainly meaning something else. (Def.'s 56.1 ¶ 13.) The example was followed by three example questions using "Thomas", "Daisy", and "Echo" to determine whether the respondent understood. (Def.'s 56.1 ¶ 14.)

The respondents were then shown ten different cards, each presenting a word, and asked whether they thought of the word on the card mainly as a person's name, mainly as something other than a person's name, as both a person's name and as something else, or they had no opinion. (Def.'s 56.1 ¶ 15.) Two different groups of words were used, each of which were shown to approximately half the respondents. (Def.'s 56.1 ¶ 16.) The first group consisted of: Amber, Cash, Dorothy, Hunter,

Jeff, Michael, Rod, Season, Wolf, and Niles. (Def.'s 56.1 ¶ 17.) The second group consisted of: Arthur, Crystal, Doris, Heather, Paris, Raven, Steven, Storm, Victor, and Niles. (Def.'s 56.1 ¶ 17.)

Persons under the age of eighteen were excluded from the survey. (Pl.'s 56.1 ¶ 45.) After a number of screening questions, instructions and examples, the last question that was asked of each respondent in the survey was "Do you think of the word on this card mainly as a person's name, mainly as something other than a person's name, or as both a person's name and as something else or don't you have an opinion?" (Pl.'s 56.1 ¶ 54.) Each respondent answered this question for ten different terms. (Pl.'s 56.1 ¶ 55.) By design, "Niles" was always the last term asked about. (Pl.'s 56.1 ¶ 56.) As a result of this manner of presenting questions and the preliminary instructions and examples which repeatedly used the phrase "person's name", each respondent had the phrase "person's name" read to them forty-two times before they were asked about their perception of the word "Niles". (Pl.'s 56.1 ¶ 57.)

The results of the survey showed that more prospective purchasers (47%) thought of the word "Niles" as a word mainly used as a person's name than as to mean something other than a person's name (15%) or as a word that is used to describe a person's name and as something else (34%). (Def.'s 56.1 ¶ 18.)

The word "Niles" was found only in one of the eleven dictionaries that were searched. (Def.'s 56.1 ¶ 19.) That dictionary defined "Niles" as a village in northeast Illinois and a city in northeast Ohio. (Def.'s 56.1 ¶ 19.) The name "Niles" appears in at least three baby name books and eight baby name websites. (Def.'s 56.1 ¶ 20.) "Niles" is also the name of one of the characters on the popular television show "Frasier". (Def.'s 56.1 ¶ 22.) A search of the People Locator database on Lexis-Nexis showed that at least 147 people in the state of Illinois and over 1,000 people in the states of

Michigan, California, and Texas are named "Niles". (Def.'s 56.1 Ex. 7 at Tab D.)

A report by a consumer impression[1] expert commissioned by Peaceable Planet concluded that hundreds of thousands of actual consumers viewed Peaceable Planet's Niles the Camel or advertisements for the product through trade shows, trade magazines, and the internet, prior to Ty's announcement of Ty's Niles the Camel plush toy camel in March 2000. (Pl.'s 56.1 ¶ 75.) However, at her deposition, Peaceable Planet's consumer impression expert admitted that she had not analyzed whether the consumer impressions had any effect on identifying the source of the product and that her report did not make any conclusions as to whether consumers made a connection between the name "Niles" and Peaceable Planet. (Defs.' Reply Pl.'s 56.1, Ex. 4 at 9-16.)

## DISCUSSION

Defendants argue that summary judgment is appropriate because "Niles" is descriptive and Peaceable Planet has failed to establish that the term "Niles" has secondary meaning. Peaceable Planet argues that summary judgment is appropriate because "'Niles' is not descriptive of a plush camel toy, as a matter of law . . . ." (Peaceable Planet's Mem. Supp. Mot. Partial Summ. J. Defs.' Sixth Affirmative Def. at 2.)

Section 43(a) of the Lanham Act provides that:

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the

---

[1] An "impression" "denotes an appearance of the term 'Niles the Camel' either in writing or through the spoken word as a result of Peaceable Planet's marketing efforts for its plush camel product." (Defs.' 56.1 Ex. 2 at 6.)

> affiliation, connection, association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Section 43(a) of the Lanham Act protects qualifying unregistered trademarks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). In order to prevail on its claim for trademark infringement under this Section of the the Lanham Act, Peaceable Planet must prove that (1) it has a valid trademark and (2) Defendants infringe that mark, i.e., Defendants' use of "a substantially similar or identical mark causes a likelihood of confusion among consumers as to the source of those specific goods or services." *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

The Lanham Act defines a "trademark" as "any word, name, symbol, device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Marks can be classified into the following categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Two Pesos*, 505 U.S. at 768. "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos*, 505 U.S. at 768.

"A generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1984). Generic terms cannot be registered, and registered marks may be cancelled at any time if they have become the generic term for a good or service. *Park 'N Fly*, 469 U.S. at 193 (citing 15 U.S.C. § 1052, 1064(3)). A mark that

is "descriptive", that is, it describes the qualities or characteristics of a good or service, or "primarily merely a surname" may be registered only if it is shown that the mark has acquired "secondary meaning", that is the mark "has become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052(e), (f).

First names, like surnames, are descriptive terms under the Lanham Act and require proof of secondary meaning in order to be considered a valid trademark. Therefore, first and surnames are not inherently distinctive and, therefore, require proof of secondary meaning in order to be a valid trademark. *See, e.g., E. & J. Gallo Winery v. Gallo Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992); *Pirone v. MacMillan Inc.*, 894 F.2d 579, 583 (2d Cir. 1990); *Marker Int'l v. DeBruler*, 844 F.2d 763, 764 (10th Cir. 1988).

A mark is primarily merely a personal name if the primary significance of the mark to the purchasing public is that of a personal name. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) (citing *In re Hutchinson Tech., Inc.*, 852 F.2d 552, 554 (Fed. Cir. 1988)). "Niles" is a personal name. According to the consumer survey conducted by MMR, 47% of prospective purchasers thought of the word "Niles" as a word mainly used as person's name. The word "Niles" appears in at least three baby name books and eight baby name websites. At least 147 people in the state of Illinois and over 1,000 in the states of Michigan, California, and Texas are named "Niles". The evidence presented is sufficient to establish, and does establish, that the significance of the word "Niles" to the purchasing public is primarily merely as a personal name and that the "Niles" mark is not inherently distinctive. *Lane Capital Mgmt.*, 192 F.3d at 346 (citing cases that held that a large number of telephone directory listings established that a mark was primarily merely a surname).

Therefore, in order for "Niles" to be considered a valid trademark, Peaceable Planet must establish that "Niles" has secondary meaning.

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 851 n.11 (1982). "Proof of secondary meaning can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001). The party asserting trademark protection, here Peaceable Planet, bears the burden of establishing secondary meaning. *See G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 994 (7th Cir. 1989).

Peaceable Planet has not presented any consumer testimony or consumer surveys that would indicate that the primary significance of the term "Niles" is to identify Peaceable Planet as the source of the product rather than the toy camel itself. Rather, Peaceable Planet attacks the propriety of the MMR survey and argues that "Niles" is suggestive geographic term. However, the MMR survey analyzed not whether consumers perceived the term "Niles" as a source identifier, i.e., whether the term has secondary meaning, but whether consumers perceived the term "Niles" as a personal name, i.e., whether the term is descriptive. Moreover, the Peaceable Planet consumer impression report, as their consumer impression expert admitted, does not establish that the term "Niles" has secondary meaning. Peaceable Planet has not presented any consumer survey evidence or direct consumer testimony that "Niles" is geographically suggestive.

It is undisputed that Peaceable Planet has been using the term "Niles" on its toy camel since

1999. It is also undisputed that between May 1999 and February 2000, Peaceable Planet shipped 3,217 of its Niles the Camel. There is also no dispute that, in 1999 and 2000, Peaceable Planet spent $112,711.59 and $78,708.07, respectively, on advertising and promoting all of its products.

"Evidence of advertising and sales is entirely circumstantial, and that evidence does not necessarily indicate that consumers associate a mark with a particular source, particularly when the advertisements and promotions do no specifically emphasize the mark. . . . Accordingly, courts have found that this type of evidence may be insufficient to establish that a descriptive mark has acquired secondary meaning." *Platinum Home Mortgage Corp.*, 149 F.3d at 729. Here, this evidence is insufficient to establish whether the term "Niles" has secondary meaning. It cannot be determined from the evidence presented what portion of the amounts spent on advertising was actually spent on Peaceable Planet's Niles the Camel. Furthermore, the low number of sales of Peaceable Planet's Niles the Camel units in a nine-month period is not sufficient to establish that the term "Niles" has secondary meaning. Peaceable Planet did not present any competent evidence as to its place in the market. Moreover, Peaceable Planet did not present any evidence of intentional copying of its mark. Thus, the evidence fails to raise a genuine issue of material fact as to whether the Peaceable Planet's "Niles" has acquired secondary meaning.

The "Niles" mark is not a valid, protectible mark because it has not acquired secondary meaning. Therefore, Defendants' Motion for Summary Judgment on the Issue of Whether the Mark "Niles" is a Protectible Trademark is granted; and Peaceable Planet's Motion for Partial Summary Judgment on Defendants' Sixth Affirmative Defense is denied.

Because the Court finds that the mark "Niles" is not a protectible trademark, Defendants are granted summary judgment on Counts I through V. *See Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d

-11-

901, 908 (7th Cir. 1983) (noting that false advertising claim under the Lanham Act failed with a holding that the alleged trademark was invalid as a merely descriptive term); *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 841 (N.D. Ill. 2002) (noting that Illinois Consumer Fraud and Deceptive Business Practices Act claims are resolved in the same manner as Lanham Act claims); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) (holding that claims for unfair competition and deceptive business practices brought under Illinois statutes and common law trademark infringement failed where the court found that the plaintiff did not have a protectible trademark under the Lanham Act because such state claims are resolved according to principles set forth under the Lanham Act).

Defendants also argue that summary judgment on Peaceable Planet's trade disparagement claim is appropriate because Peaceable Planet has not shown that Ty made any disparaging or false statements regarding the quality of Peaceable Planet's products, and the complaint does not allege that Ty made such statements.

In order to prove a claim of trade disparagement, Peaceable Planet must prove the publication of a false or misleading representation of fact that disparages the quality of its goods or services. *Olin Hunt Specialty Prods., Inc. v. Advanced Delivery & Chem. Sys.*, No. 88 C 20364, 1990 WL 304261, at *2 (N.D. Ill. Oct. 31, 1990); *see also Beckner v. Zellner*, 292 Ill. App. 3d 116, 128 (1997) (noting that to prove commercial disparagement "plaintiff must show that defendant made false and demeaning statements regarding the quality of another's goods and services") (internal quotation marks omitted). Peaceable Planet has not presented any evidence that Defendants made any false, misleading, or demeaning statements regarding its products. The complaint does not allege that Defendants made false, misleading, or demeaning statements regarding the quality of Peaceable

Planet's Niles the Camel or any other Peaceable Planet product. Rather, the complaint alleges that Defendants' conduct in manufacturing and selling Ty's Niles the Camel will cause (1) Peaceable Planet to be perceived as an infringer of Ty's alleged trademark rights, (2) Peaceable Planet's products to be perceived as inferior, and (3) damage to Peaceable Planet's reputation and goodwill. (Compl. ¶¶ 100, 101.) However, such conduct cannot, as a matter of law, give rise to a claim for commercial disparagement. *Global Relief Found.*, 2002 WL 31045394, at *12 ("Statements attacking the plaintiff itself or its conduct, as opposed to the quality of its goods or services, may give rise to a defamation claim but cannot support a commercial disparagement claim."). Therefore, Defendants are also granted summary judgment on Count VI.

Because the Court finds that Peaceable Planet's "Niles" mark is not predictable under the Lanham Act, Defendants' Motions for Partial Summary Judgment on the Issues of No Likelihood of Confusion and Monetary Relief and Warner's Motion for Summary Judgment are denied as moot.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment on the Issue of Whether the Mark "Niles" is a Protectible Trademark is granted; and Peaceable Planet's Motion for Partial Summary Judgment on Defendants' Sixth Affirmative Defense is denied. Defendants are granted summary judgment on Counts I through VI. Because the Court finds that Peaceable Planet's

"Niles" mark is not protectible under the Lanham Act, Defendants' Motions for Partial Summary Judgment on the Issues of No Likelihood of Confusion and Monetary Relief and Warner's Motion for Summary Judgment are denied as moot.

**IT IS SO ORDERED.**

August 27, 2003

John W. Darrah, Judge
United States District Court